**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| STACIE RAY, et al. | ) | CASE NO.: 2:18-cv-00272-MHW-CMV |
| | ) | |
| Plaintiffs, | ) | JUDGE MICHAEL WATSON |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE CHELSEY |
| | ) | VASCURA |
| LANCE HIMES, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Lance Himes, in his official capacity as Director of the Ohio Department of Health, Karen Sorrell, in her official capacity as Chief of the Office of Vital Statistics, and Judith Nagy, in her official capacity as State Registrar of the Office of Vital Statistics (collectively "Defendants"), move to dismiss the Complaint of Plaintiffs Stacie Ray, Basil Argento, Jane Doe, and Ashley Breda (collectively "Plaintiffs").

As set forth more fully in Defendants' memorandum in support, which Defendants incorporate by reference, Plaintiffs' Complaint fails to state a claim upon which relief can be granted and therefore must be dismissed in its entirety.

Dated: July 6, 2018

Respectfully submitted,

*/s/ Kimberly Moses*
KIMBERLY MOSES (0029601)
ALBERT J. LUCAS (0007676)
JASON J. BLAKE (0087692)
CALFEE, HALTER & GRISWOLD LLP
1200 Huntington Center
41 S. High Street
Columbus, Ohio 43215
Telephone: (614) 621-1500

1

Fax: (614) 621-0100
kmoses@calfee.com
alucas@calfee.com
jblake@calfee.com

*Attorneys for Defendants*

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STACIE RAY, et al. | ) | CASE NO.:   2:18-cv-00272-MHW-CMV |
| | ) | |
| Plaintiffs, | ) | JUDGE MICHAEL WATSON |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE CHELSEY |
| | ) | VASCURA |
| LANCE HIMES, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
## PURSUANT TO FED. R. CIV. P. 12(b)(6)

## I.    INTRODUCTION

Ohio birth certificates record the sex of a child as reported at birth.  The circumstances under which a person can correct the sex marker on his or her birth certificate, or update other information reported and recorded on the Ohio-issued birth certificates, is governed by a detailed statutory regime set forth in Ohio Rev. Code § 3705.01 et seq.  Ohio's legislature was well within its authority when it defined the contours of Ohio's birth-record laws.  Birth certificates serve an important purpose and Ohio has a substantial interest in ensuring their accuracy, including an accurate record of a person's sex as reported at birth.

Plaintiffs seek to change the sex recorded on their birth certificates and challenge the constitutionality of Ohio law, which does not provide a mechanism to modify records as Plaintiffs seek.  Specifically, Ohio law allows a person to correct inaccurately reported information in a birth record, including inaccurate information regarding a person's "sex" at birth.  But Plaintiffs do not argue that their "sex" was inaccurately reported at birth.  Rather, Plaintiffs argue that Ohio law is unconstitutional because it does not allow them to change the "sex" designation on their birth certificates to "accurately reflect their gender identity," which "does not match their sex assigned at birth."  *See* Doc. 1 at ¶¶ 1, 19.  But Ohio birth certificates do not record gender identity, and

1

Plaintiffs have no constitutional right to change their birth certificates in the manner they request. Thus, the Complaint fails to state a claim and should be dismissed for numerous reasons.

First, Ohio's recording of a child's sex at birth on the birth certificate does not constitute government-compelled speech and therefore cannot support a First Amendment challenge. Indeed, the birth certificate is governmental speech that is a historical reflection of what was reported at the time of a child's birth, not an opinion, objectionable viewpoint, or ideology.

Second, Plaintiffs' Due Process claim, based on "informational privacy," also fails. Ohio's birth certificates are public records, and public records cannot form the basis for an informational privacy claim. Moreover, Plaintiffs have failed to allege a recognized fundamental right that would entitle them to relief under the Due Process Clause.

Third, Plaintiffs' Equal Protection claim fails as a matter of law because the challenged law is facially neutral—that is, Plaintiffs allege no disparate treatment—and Plaintiffs have not plausibly alleged the requisite discriminatory intent for a disparate-*impact* claim. Also, because Plaintiffs are not part of a protected class, Ohio's birth-record laws must be analyzed under rational basis review—a threshold that the law easily exceeds. Even if transgender people are treated as a protected class subjected to heightened scrutiny, Ohio has a substantial interest in ensuring the accuracy of its birth records, so any equal protection claim must fail.

The statutory scheme enacted by Ohio's legislature regarding birth certificates is, like the laws in all 50 states, a result of careful state-specific policy considerations. The proper forum for Plaintiffs to address this issue is in the state legislature, where competing state interests and policies can be fully vetted and tailored to best serve the needs of all Ohioans. As discussed more fully below, the Court should dismiss Plaintiffs' Complaint in its entirety.

## II.    BACKGROUND

Plaintiffs are four transgender individuals who seek to change the "sex" designation on their birth certificates. *See* Doc. 1, *passim*. According to Plaintiffs, Defendants "enforce[] a policy and practice that categorically refuses to correct the gender marker on transgender people's birth certificate to match their gender identity…." Doc. 1 at ¶ 41. Although Plaintiffs characterize their challenge as one involving the state's "policy and practice," this lawsuit actually presents a facial challenge to Ohio Rev. Code §§ 3705.15 and 3705.22, the laws governing corrections of Ohio-issued birth certificates. Plaintiffs do not challenge any discretionary policy or practice; rather, they attack Defendants' adherence to Ohio's birth-record laws, which do not allow the relief sought by Plaintiffs. *See In re Declaratory Relief for Ladrach*, 513 N.E.2d 828, 831 (Ohio Ct. Com. Pl. 1987) (holding that the birth record statute is a "correction" only statute and cannot be used to modify the sex designation on a person's birth certificate except where the sex marker was inaccurately reported or recorded).

### A.    Ohio Statutes Allow Corrections To Birth-Record Mistakes Only In Certain Circumstances.

Two Ohio statutes allow birth-record errors to be corrected. Ohio Rev. Code § 3705.15 allows probate courts to issue an order directing the Ohio Department of Health to correct birth record information that "has not been properly and accurately recorded":

> Whoever claims to have been born in this state, and whose registration of birth is not recorded, or has been lost or destroyed, *or has not been properly and accurately recorded*, may file an application for registration of birth or correction of the birth record in the probate court of the county of the person's birth or residence or the county in which the person's mother resided at the time of the person's birth. If the person is a minor the application shall be signed by either parent or the person's guardian.

> (A)    An application to correct a birth record shall set forth all of the available facts required on a birth record and the reasons for making the application, and shall be verified by the applicant…. The application shall be supported by the affidavit of the physician or certified nurse-midwife in attendance. If an affidavit is not available, the application shall be supported by the affidavits of at least two persons

3

having knowledge of the facts stated in the application, by documentary evidence, or by other evidence the court deems sufficient.

Ohio Rev. Code § 3705.15(A) (emphasis supplied).

Ohio Rev. Code § 3705.22 also authorizes the Ohio Department of Health to correct birth-certificate errors, where supported by appropriate evidence:

> *Whenever it is alleged that the facts* stated in any birth, fetal death, or death record filed in the department of health *are not true*, the director [of the Ohio Department of Health] may require satisfactory evidence to be presented in the form of affidavits, amended records, or certificates to establish the alleged facts. When established, the original record or certificate shall be supplemented by the affidavit or the amended certificate or record information.
>
> …
>
> A certified copy of a certificate or record issued by the department of health shall show the information as originally given and the corrected information, except that an electronically produced copy need indicate only that the certificate or record was corrected and the item that was corrected.

Ohio Rev. Code § 3705.22 (emphasis supplied).

Both statutes allow birth records to be corrected if information in them was incorrectly reported or mistakenly recorded at the time of birth. *Id.* Other Ohio laws specifically allow changes to a birth record to address an incorrect date of birth (§ 3505.15(D)(2)), a name change (§ 3705.13), or an adoption (§ 3705.124). But nothing in Ohio law authorizes a change to the sex reported on a birth certificate based on a later-announced gender identity that differs from the sex recorded at birth.

Plaintiffs do not allege that Ohio mistakenly recorded their "sex" at birth, *i.e.*, they do not claim an error correctable under Ohio Rev. Code § 3705.15 or § 3705.22. Rather, Plaintiffs allege that Ohio violates the constitution by maintaining a "categorical bar to changing gender markers on the birth certificates of transgender people…." Doc. 1 at ¶ 47. Plaintiffs' Complaint fails to allege any viable constitutional claim regarding Ohio's birth record laws.

**B.    Ohio's Birth Records Record The Sex Reported At Birth, And Do Not Contain A "Gender Marker" That Purports To Show Gender Identity.**

4

An Ohio birth certificate is made shortly after birth, and records information and vital statistics reported to the Ohio Department of Health.  Ohio is a passive gatherer of the birth record information and merely inputs the information that is reported to it.  In deciding this motion, the Court may consider publicly available governmental information, *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007), which includes information related to Ohio's birth records.   The form used by the Ohio Department of Health to record birth record information contains over 300 topics, ranging from the date of birth to the educational background of the parents to the mother's smoking history.  *See* Exhibit 1, Ohio Vital Statistics Birth Occurrence File Layout.  That information then forms the basis of the historical birth record for the child, including the short and long form of birth records, as well as the more familiar Certification of Birth.  *See* Exhibit 2, Certification of Birth Abstract.  Ohio does not collect information related to a child's "gender marker" or "gender identity."  *See generally* Ex. 1.  Nor do Ohio's birth records, including the Certification of Birth, reflect such information.  *See* Ex. 2. Instead, Ohio's birth certificates record the child's "sex," as reported at the time of birth.  The form allows entries only for male, female, or undetermined.  *See* Ex. 1 at 1 ("Undetermined" is used when a child's sex cannot be determined, such as when the child is born with intersex conditions).

The scientific community distinguishes biological sex from gender identity.  *See F.V. v. Barron*, 286 F. Supp. 3d 1131, 1136–37 (D. Idaho 2018).  "There is scientific consensus that biological sex is determined by numerous elements, which can include chromosomal composition, internal reproductive organs, external genitalia, hormone prevalence, and brain structure." *Id.* at 1136.   This position is echoed by the American Psychology Association, which defines sex as "one's biological status as either male or female…." *See id.* at 1136, n. 5 (citing Transgender People, Gender Identity and Gender Expression, American Psychological Association (2018), http://www.apa.org/topics/lgbt/transgender.aspx).

5

Gender, on the other hand, "is the intrinsic sense of being male, female, or an alternative gender." *Id.* at 1136 (citing World Professional Association for Transgender Health, *Standards of Care for the Health of Transsexual, Transgender, and Gender Nonconforming People* at 96 (7th Version, 2011)) ("WPATH *Standards of Care*"). "[T]ransgender is an adjective used to describe a person who has a gender identity that differs, in varying degrees, from the sex observed and assigned at birth." *Id.* (citing WPATH *Standards of Care* at 97).

Plaintiffs' Complaint acknowledges the distinction between "gender" and "sex." *See, e.g.*, Doc. 1 at ¶ 22 (stating that Plaintiffs seek to bring their "gender identity" and "sex" into "alignment"); *id.* at ¶ 23 (distinguishing "gender identity" from "sex"); *id.* at ¶ 26 (noting the "discordance between [] gender identity and birth-assigned sex"). Nonetheless, Plaintiffs ask this Court to conflate the two and treat the sex designation recorded at the time of birth as a "gender identity" marker. Ohio's birth records indicate a baby's "sex" at the time of birth. The State of Ohio does not ask for, nor does the birth certificate record, a gender identity marker. Absent a showing that Plaintiffs' "sex" was incorrectly recorded at birth, Ohio law does not permit the birth certificate change that Plaintiffs seek.

## III. ARGUMENT

### A. Standard Of Review

Plaintiffs' Complaint is legally deficient and should be dismissed for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Ultimately, a party's

"obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and citation omitted).

Plaintiffs bring this facial challenge to Ohio's birth-record laws under the First Amendment, the Due Process Clause, and the Equal Protection Clause of the U.S. Constitution. Because facial challenges carry greater consequences than as-applied challenges, *i.e.*, invalidating an entire law, the Supreme Court places a high burden on parties seeking to establish a facial challenge. *See United States v. Stevens*, 559 U.S. 460, 472 (2010). To prevail, Plaintiffs must establish either "that no set of circumstances exists under which [Ohio's birth-record laws] would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987), or that the statutes are devoid of any "legitimate sweep." *Washington v. Glucksberg*, 521 U.S. 702, 740, n. 7 (1997) (Stevens, J., concurring) (internal quotation marks omitted). As shown below, Plaintiffs cannot meet this burden as a matter of law, so the case must be dismissed.

**B.    Plaintiffs' First Amendment Claim Is Legally Deficient And Should Be Dismissed.**

Plaintiffs' First Amendment claim is predicated on their assertion that Ohio's birth certificate statutes "prevent[] [them] from accurately expressing their gender," and "force them … to endorse the government's position as to their gender," and therefore violate the First Amendment. Doc. 1 at ¶¶ 127–28. As discussed below, Ohio's birth certificate statutes do no such thing, and Plaintiffs fail to state a plausible First Amendment claim.

**1.    The Information Contained in Ohio's Birth Records Constitutes Government Speech, and Such Governmental Speech Cannot be the Proper Subject of a First Amendment Claim.**

To start, Plaintiffs' First Amendment claim fails because the information contained in Ohio's birth records constitutes governmental speech. "When government speaks, it is not barred by the Free Speech Clause from determining the content of what it says." *Walker v. Tex. Div.,*

*Sons of Confederate Veterans, Inc.*, 135 S. Ct. 2239, 2245 (2015) (citation omitted). "[G]overnment actions and programs that take the form of speech [] do not normally trigger the First Amendment rules designed to protect the marketplace of ideas. *Id.* at 2245–46 (citation omitted). As the Supreme Court reasoned in *Walker*, "it is not easy to imagine how government could function if it lacked th[e] freedom to select the messages it wishes to convey." *Id.* at 2246 (citation and quotations omitted). In general, "when the government speaks it is entitled to promote a program, to espouse a policy, or to take a position. In doing so, it represents its citizens and it carries out its duties on their behalf." *Id.*

The Supreme Court in *Walker* found that specialty license plates issued by Texas constituted governmental speech and that the censorship of potentially offensive content on them did not violate First Amendment rights. *Id.* at 2253. In finding that the content of the license plates was governmental speech not subject to First Amendment scrutiny, the Supreme Court recognized that license plates served a vital governmental purpose as identification, that the license plates had "TEXAS" written on them, that every license plate was issued by the state, that the license plates were designed by the state, and that the state maintained control over what could be written on the license plates. *Id.* at 2248–50.

Applying the factors laid out in *Walker*, the Ohio birth certificates constitute governmental speech. First, as Plaintiffs admit, birth certificates in Ohio serve a vital governmental purpose as a form of identification. *See* Doc. 1 at ¶¶ 32–34. Second, they self-evidently reflect a host of objective and demographic data that existed at the time of birth. Third, the state is speaking through them. All birth certificates include, in large letters, the following caption "STATE OF OHIO OFFICE OF VITAL STATISTICS." *See* Ex. 2. The birth certificates also include the Ohio Department of Health seal, and the word "OHIO" is written approximately 70 times on the document. *Id.* Further, the signature of the State Registrar of Vital Statistics appears on the face

8

of the document, together with her certification that the information on the birth certificate is true. *Id.* Finally, the state maintains absolute control over what information can be displayed on birth certificates. As such, under the analysis set forth in *Walker*, Ohio's birth certificates constitute governmental speech and cannot serve as the basis of a valid First Amendment claim.

> **2. Ohio's Birth Records Do Not Record a Person's Gender Identity, so Plaintiffs Are Not Entitled to the Relief They Seek.**

Plaintiffs contend that Ohio's birth certificates prevent them from "accurately expressing their gender" and "convey[] the state's ideological message that gender is determined solely by the appearance of external genitals…." Doc. 1 at ¶¶ 127–28. Not so. Ohio's birth records do not include a marker for "gender" or "gender identity." *See* Ex. 2. Nor does the state's accurate recording of the sex of a child on a birth record affect a transgender person's ability to express his or her gender identity, or force them to identify with a gender, or require them to espouse some ideological viewpoint about gender identity. Plaintiffs are free to choose how, what, and whether to express anything about their gender identity. For these reasons, Plaintiffs cannot plausibly allege that Ohio's birth records make any statement as to Plaintiffs' gender identity, much less prove, under any set of facts, that Ohio birth records inaccurately express such gender identity. In such circumstances, no valid First Amendment claim exists.

> **C. Ohio's Birth-Record Laws Fully Comply With The Due Process Clause Of The U.S. Constitution.**

Ohio's birth-record laws are consistent with the Due Process Clause of the Fourteenth Amendment. Plaintiffs allege that Defendants violated the Due Process Clause by causing "transgender people to involuntarily disclose their transgender identity" and that such activity constitutes a violation of "the right to live in accordance with one's gender identity." *See* Doc. 1 at ¶¶ 120, 122. This claim fails as a matter of law.

Plaintiffs' claim sounds in what the Sixth Circuit has described as an "informational right to privacy." *See Bloch v. Ribar*, 156 F.3d 673, 683 (6th Cir. 1998). The informational right to privacy "protects an individual's right to control the nature and extent of information released about that individual." *Id.* (citing *Whalen v. Roe*, 429 U.S. 589, 599–600 (1977)). It is well established that an informational right to privacy does not exist over information that is already in the public record, and for that reason alone, Plaintiffs' due process claim must fail. *See Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 495 (1975); *Lambert v. Hartman*, 517 F.3d 433, 442–46 (6th Cir. 2008); *Does v. Munoz*, 507 F.3d 961, 965 (6th Cir. 2007); *G.B. v. Rogers*, 2009 U.S. Dist. LEXIS 44055, at *29–30 (S.D. Ohio May 11, 2009). Under Ohio law, birth certificates are available to the public and are therefore public records. *See* Ohio Rev. Code § 3705.23(A)(1). Plaintiffs' sex designation on their birth certificates has been available for public view since birth, so changing the birth record neither claws back nor updates information that may have already been accessed and aggregated by others, such as those who gather such data for online databases. Thus, even if Plaintiffs were permitted to change their birth records to reflect their gender identity, Plaintiffs' information privacy objectives would still be unachievable.

Plaintiffs' claim also fails as a matter of law because the Sixth Circuit narrowly construes informational privacy rights "to interests that implicate a fundamental liberty interest." *Bloch*, 156 F.3d. at 684 (citing *J.P. v. DeSanti*, 653 F.2d 1080, 1090 (6th Cir. 1981)). The Sixth Circuit applies a two-part test to determine whether the disclosure of private information warrants constitutional protection: "(1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private." *Id.* (citation omitted). The "balancing test should be employed only if fundamental or traditional rights are implicated." *Id.* As the Sixth Circuit has recognized, "identifying a new fundamental right subject

10

to the protections of substantive due process is often an uphill battle, as the list of fundamental rights is short." *Munoz*, 507 F.3d at 965.

The Sixth Circuit has recognized a constitutional right to informational privacy only in two circumstances: "(1) where the *release* of personal information could lead to bodily harm [], and (2) where the information *released* was of a sexual, personal, and humiliating nature []." *Lambert*, 517 F.3d at 440 (citations omitted) (emphasis added). In both circumstances, it is the government that releases the private information. *See id.* at 440–41; *see also Beck v. Muskingum County*, 2012 U.S. Dist. LEXIS 146014, at *12–13 (S.D. Ohio Oct. 10, 2012) (dismissing informational privacy claim because there was no evidence detailing the information allegedly disclosed by the government). Moreover, courts in the Sixth Circuit further narrow the right to privacy in the context of bodily harm "to circumstances where the information disclosed was particularly sensitive and the persons to whom it was disclosed were particularly dangerous…." *Barber v. Overton*, 496 F.3d 449, 456 (6th Cir. 2007).

Plaintiffs' due process claim fails the two-part test described in *Bloch* as a matter of law for several reasons. First, Plaintiffs have failed to identify a fundamental right that is being violated. The gravamen of Plaintiffs' due process claim is that they have a fundamental right to keep secret how their sex was reported and recorded at birth. That, however, is not a fundamental right recognized by the Sixth Circuit or the Supreme Court. Maintaining secrecy over basic vital statistics maintained by the state, and already in the public domain for decades, does not implicate a "fundamental right" or "the concept of ordered liberty." *See Bloch*, 156 F.3d. at 684.

Second, as discussed above, the Sixth Circuit recognizes a right to informational privacy only when the government is responsible for releasing the protected information. *See Lambert*, 517 F.3d at 440. Plaintiffs' Complaint only identifies actions taken by non-Defendants relating to the release of Plaintiffs' birth certificate information. *See, e.g.*, Doc. 1 at ¶ 54 (co-worker); *id.* at

¶ 55 (TSA agent); *id.* at ¶ 67 (Italian Consulate); *id.* at ¶ 85 (Social Security Administration); *id.* at ¶ 97 (Arizona Department of Transportation Motor Vehicle Division). Nor do Plaintiffs allege that Defendants have taken affirmative steps to publish or advertise Plaintiffs' birth certificates. Instead, the Complaint repeatedly alleges that it was Plaintiffs, not Defendants, who have disclosed this information to third parties. *See id.* at ¶¶ 54–55, 57, 67, 77, 85, 89, 97, 99, and 101.

Third, Plaintiffs generally allege that possessing their birth certificates increases their exposure to violence. *Id.* at ¶¶ 53, 64, 84 and 96. But that allegation falls far short of the Sixth Circuit's requirement that the private information must be of a "sexual, personal, and humiliating nature," and specifically disclosed to "particularly dangerous" individuals. *Compare Lambert*, 517 F.3d at 440; *with Barber*, 496 F.3d at 456. Plaintiffs' allegations do not identify a situation where their birth certificate information was released to a dangerous individual likely to expose Plaintiffs to violence.

Accordingly, this Court should dismiss the Due Process claim.

### D. Plaintiffs Fail To State A Valid Equal Protection Claim

Ohio's birth-record laws fully comply with the Equal Protection Clause of the U.S. Constitution. Plaintiffs' allegations to the contrary fail as a matter of law for at least two reasons: (1) the laws governing the issuance of birth certificates in Ohio are facially neutral, so the claim is based on disparate impact rather than disparate treatment, but Plaintiffs have failed to adequately plead a discriminatory intent in either the enactment or enforcement of the law; and (2) transgender people are not a protected class, and Ohio has a legitimate interest in maintaining the accuracy of its birth records. Plaintiffs' equal protection claim is simply not plausible and must be dismissed.

#### 1. Ohio's Birth-Record Laws Are Facially Neutral and Plaintiffs Have Not Adequately Pleaded Discriminatory Intent.

Plaintiffs challenge Ohio's birth-record laws on equal protection grounds, alleging such laws discriminate against transgender people on the basis of "gender nonconformity, gender

12

identity, transgender status, and gender transition." Doc. 1 at ¶ 104. Ohio's birth-record laws do not mention transgender or record any of the other gender-related categories identified by Plaintiffs. *See* Ohio Rev. Code §§ 3705.15 and 3705.22. Thus, despite Plaintiffs' bald assertions to the contrary, Ohio law does not "facially and intentionally discriminate[] against transgender people based on sex." Doc. 1 at ¶ 104. Indeed, Ohio's laws governing the issuance and correction of its birth records are facially neutral and do not discriminate against any class of people, including transgender people. In other words, no one born in Ohio has an open-ended right to amend the sex recorded at birth on a birth certificate. To the extent that Plaintiffs allege that this equal treatment affects them unequally, because only transgender individuals would want such a mechanism, that is a claim of disparate *impact*, not disparate *treatment*.

"The Equal Protection Clause forbids only intentional discrimination." *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994) (citing *Washington v. Davis*, 426 U.S. 229 (1976)). "When a facially neutral rule is challenged on equal protection grounds, the plaintiff must show that the rule was promulgated or reaffirmed *because of*, not merely in spite of, its adverse impact on persons in the plaintiff's class. *Id.* (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279 (1979)) (emphasis in original).

Ohio's birth-record laws are facially neutral; they apply equally to all born in Ohio. *See* Ohio Rev. Code §§ 3705.15 and 3705.22. No person, regardless of his or her gender identity, is permitted to change the "sex" on their birth certificate for any reason other than to correct a mistake made at the child's birth. *See id.* Plaintiffs' status as transgender people do not limit their ability to take advantage of the correction statutes, nor does their status confer upon them rights or obligations that other Ohio-born people do not also have.

Thus, for Plaintiffs to succeed on their equal protection challenge to Ohio's birth-record laws, Plaintiffs must prove not only that the facially neutral laws have a disparate impact on

13

Plaintiffs' class, but also that the law's intended purpose was to discriminate against such class. *See Davis*, 426 U.S. at 241 ("A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate...."). Put another way, mere disproportionate impact is not enough. *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977). "Proof of [] discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Id.* at 265. The kind of impact necessary to show "intentional discrimination is that which is significant, stark, and unexplainable on other grounds." *Horner*, 43 F.3d at 276 (citing *Arlington*, 429 U.S. at 279).

Plaintiffs do not allege the kind of intentional discrimination necessary to survive a motion to dismiss. Plaintiffs do not identify, or even allege, that the legislature had a discriminatory purpose in enacting Ohio's facially neutral birth-record laws. *See Bailey v. Carter*, 15 Fed. Appx 245, 251 (6th Cir. 2001) (dismissing Equal Protection claim because there was no allegation that the agency had a discriminatory purpose in enacting a facially neutral rule). Instead, Plaintiffs generically claim that Defendants' enforcement of Ohio law "is maintained and motivated by animus towards transgender people." Doc. 1 at ¶ 112. That allegation is simply implausible, given Defendants' statutorily-mandated compliance with Ohio's facially neutral birth-record laws. And to the extent Plaintiffs allege that in the past, Ohio allowed transgender people to update the sex marker on their birth certificates, *see id.* at ¶¶ 43–44, that action did not comply with Ohio law, which provides for corrections to the sex designation only if it was reported or recorded in error. *See* Ohio Rev. Code §§ 3705.15 and 3705.22. In any event, Plaintiffs' bald statement about Defendants' animus, unadorned by any supporting facts or allegations, is insufficient to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555.

Accordingly, this Court should dismiss the equal protection claim in Count I of Plaintiffs' Complaint.

**2.    Transgender People Are Not a Protected Class Entitled to Heightened Scrutiny and, in any Event, Ohio has a Substantial Interest in Enforcing its Birth-Record Laws.**

Moreover, Plaintiffs' claim is further flawed because transgender people are not a protected class, and Defendants have a rational basis to enforce Ohio's birth-record laws. Neither the Supreme Court nor the Sixth Circuit have added transgender status to the suspect classifications entitled to heightened scrutiny under the Equal Protection Clause. Indeed, many courts have found that transgender people are not a protected class, so no heightened scrutiny applies. *See, e.g.*, *Johnston v. Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ.*, 97 F.Supp.3d 657, 668 (W.D. Pa. 2015) (noting that transgender status has not been recognized as a suspect classification and applying rational-basis review); *Braninburg v. Coalinga State Hosp.*, 2012 U.S. Dist. LEXIS 127769, at *22 (E.D. Cal. 2012) ("[I]t is not apparent that transgender individuals constitute a 'suspect' class."); *Jamison v. Davue*, 2012 U.S. Dist. LEXIS 40266, at *10 (E.D. Cal. 2012) ("[T]ransgender individuals do not constitute a 'suspect' class, so allegations that defendants discriminated against him based on his transgender status are subject to a mere rational basis review."); *Kaeo-Tomaselli v. Butts*, 2013 U.S. Dist. LEXIS 13280, at *13 (D. Haw. 2013) (finding that the plaintiff's status as a transgender female did not qualify her as a member of a protected class and explaining the court could find no "cases in which transgender individuals constitute a 'suspect' class"); *Lopez v. City of New York*, 2009 U.S. Dist. LEXIS 7645, at *13 (S.D.N.Y. 2009) (explaining that transgender individuals are not a protected class for the purpose of Fourteenth Amendment analysis, and claims that a plaintiff was subjected to discrimination based on her status as transgender are subject to rational basis review).

The only cases in either the Supreme Court or Sixth Circuit addressing special legal protections for transgender people have done so within the context of Title VII. *See EEOC v. R.G.*, 884 F.3d 560 (6th Cir. 2018); *Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004). But the

15

*statutory* standard of Title VII does not apply to this Court's equal-protection analysis. *See Davis*, 426 U.S. at 239 (1976). Further, the analysis in those cases is not that "transgender" is the named protected class in Title VII, but that a transgender individual who does not conform to the expectations of his or her sex as recorded at birth is subjected to sex stereotyping, and is thus subject to sex discrimination. *See EEOC*, 884 F.3d at 573–74 (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). And the few out-of-circuit and district courts that have addressed the issue under the Equal Protection Clause are not binding on this Court. *See H.R. v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 678 n.5 (S.D. Ohio 2014) ("In matters concerning federal law a District Court is bound only by the decisions of the Court of Appeals for the Circuit in which it sits and by the decisions of the United States Supreme Court...not...fellow district court judges.") (citation omitted). In any event, as set forth below, whether transgender people constitute a protected class is not dispositive in this case because Plaintiffs cannot allege a viable equal protection claim under either circumstance.

When the state action does not impact a protected class, Equal Protection Clause claims are reviewed under a rational basis standard. *See Heller v. Doe*, 509 U.S. 312, 319 (1993). Under this standard, "[a] classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320. The face of the Complaint shows that, as a matter of law, Plaintiffs cannot survive application of a rational basis review to their Equal Protection claim. Ohio can show an irrebuttable rational basis to enforce its birth record statutes. Moreover, Ohio's interest in enforcing such statutes is so substantial that even if this Court were to find that transgender people are a protected class, requiring the application of heightened scrutiny (which this Court should not do) Plaintiffs' equal protection claim still fails.

16

In Ohio, birth records are historical records used not only to record a person's birth, but also to verify a person's death. As set forth in Ohio Rev. Code § 3705.27:

> The director of health may match birth records and death records in accordance with written standards which he shall promulgate in order *to protect the integrity of vital records and prevent the fraudulent use of birth records of deceased person, to prove beyond a reasonable doubt the fact of death*, and to post the facts of death to the appropriate birth record. Copies made of birth records marked "deceased" shall be similarly marked "deceased."

Ohio Rev Code § 3705.27 (emphasis added). Thus, Ohio law recognizes not only a rational basis, but also several substantial interests in maintaining the accuracy of Ohio's birth records, including proving the fact of death and preventing fraud. Ohio's substantial interest in the accuracy of its records is echoed by numerous courts across the country. *See, e.g.*, *In re Michaela R.*, 253 Conn. 570, 602, n.30 (2000) ("The state, therefore, has a substantial interest in limiting alterations and amendments [to birth certificates] that potentially may jeopardize the accuracy of the records."); *United States v. Machinski*, 2017 U.S. Dist. LEXIS 93286, at *16 (N.D. Cal. June 16, 2017) (finding that the Department of Education had a substantial interest in the accuracy of student-loan documents); *State v. Schaefer*, 239 Mont. 437, 441 (1989) (finding the state had a substantial interest in maintaining accurate records of certain sales transactions).

For these reasons, the accuracy of Ohio's birth records is paramount in the well-ordered operation of the state's vital recordkeeping and the prevention of fraud. Ohio's statutes survive regardless of whether this Court applies rational basis review or heightened scrutiny. Nothing in Plaintiffs' pleadings overcomes that finding. Because Plaintiffs' equal protection claim fails under either analysis, Count I of the Complaint should be dismissed.

### E. Other Compelling Reasons Exist To Dismiss The Complaint And Deny The Relief Sought By Plaintiffs.

Plaintiffs ask this Court to strike at least two (and potentially more) statutes contained in Ohio's vital statistics laws. As the Supreme Court has previously held, a facial attack on the law

17

is "strong medicine." *See Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973). Judicial restraint is cautioned in facial challenges "because such efforts do not seek to invalidate laws in concrete, factual settings but to 'leave nothing standing.'" *Fieger v. Michigan Supreme Court*, 553 F.3d 955, 960 (6th Cir. 2009) (citing *Warshak v. United States*, 532 F.3d 521, 528 (6th Cir. 2008) (en banc)). Indeed "[c]laims of facial invalidity often rest on speculation[,] . . . raise the risk of premature interpretation[,] . . . run contrary to the fundamental principle of judicial restraint[,] . . . [and] threaten to short-circuit the democratic process." *Id.* (citing *Washington State Grange v. Washington State Republican Party*, 128 S. Ct. 1184, 1191 (2008)) (internal quotes and citations omitted). Plaintiffs' facial challenge to Ohio's birth-record laws "is a remedy that courts employ 'sparingly and only as a last resort.'" *Id.* (citing *Broadrick*, 413 U.S. at 613).

Invalidating Ohio's law would not only violate traditional judicial-restraint principles, but would also upend a comprehensive legislative scheme with many intertwined parts. For example, Ohio Rev. Code § 3705.27, which matches birth certificates with death certificates, would undoubtedly be impacted by incongruous information related to the "sex" of a deceased Ohioan. *See id.* Various aspects of numerous other statutes would also be jeopardized if, as Plaintiffs seek to do here, reference to a person's sex as reported at birth could be indelibly altered. *See, e.g.*, Ohio Rev. Code § 3109.19, et seq. (parentage determinations); Ohio Rev. Code § 3345.32 (selective service requirements); Ohio Rev. Code § 5123.01 (residency definitions under the Department of Developmental Disabilities); Ohio Rev. Code § 5147.18 (regulating the use of prisoners for hard labor); Ohio Rev. Code § 125.65 (incentivizing female entrepreneurs); Ohio Rev. Code § 2151.16 (appointing female referees for trials of females); Ohio Rev. Code § 341.05 (employing females at prisons).

In light of the many statutes that would be immediately affected by striking Ohio's birth-record laws, Plaintiffs' Complaint implicates core federalism concerns. When considering

remedial measures, the Supreme Court has warned that courts "must take into account the interest of state and local authorities in managing their own affairs, consistent with the Constitution." *Milliken v. Bradley*, 433 U.S. 267, 280–81 (1977). Overriding validly enacted state law usurps Ohio's legislative prerogative in an area of governance that is reserved to the states.

Moreover, Plaintiffs not only seek to strike Ohio law, but also seek affirmative relief from this Court to allow Plaintiffs the ability to update their sex designation based solely on gender identity. To provide Plaintiffs the remedy they seek, this Court would have to create detailed rules outlining the circumstances under which a transgender person would be entitled to change the sex marker on his or her birth certificate. Among other things, the Court would need to consider whether the applicant needed to have sex-change surgery before a birth certificate change could occur. If so, how much surgery would be required? Would hormone therapy be needed? If so, for how long? Would a doctor's affidavit be required to prove that a person had transitioned? Would a psychological exam be needed to confirm whether a person's gender identity conflicts with his or her sex reported at birth? Despite Plaintiffs attempt to color Ohio's as an outlier as it relates to birth record changes, no national consensus exists on these issues, as states have varied approaches to these questions. *See, e.g.*, State-by-State Overview, available at https://transgenderlawcenter.org/resources/id/state-by-state-overview-changing-gender-markers-on-birth-certificates (last visited July 6, 2018). Indeed, these are complicated policy choices that implicate numerous state and individual interests. Federalism principles dictate that this Court leave this task to the reasoned consideration of Ohio's legislature.

Finally, Ohio's laws regarding the ability to update a sex marker on a birth certificate are narrowly tailored. Birth certificates are historical records of a child's birth and contain certain immutable facts such as the date, time, location, and child's sex as reported at birth. On the other hand, Ohio law does allow Plaintiffs to change other public records to correspond with their gender

identity. For example, as Plaintiffs allege, the Ohio Bureau of Motor Vehicles already allows transgender people to change the sex designation on their driver's license or state identification card to match their gender identity. Doc. 1 at ¶ 47. Driver's licenses and state issued identification cards are reflections of the present. They are renewed periodically and updates to name, address, weight, and even sex, are allowed. Accordingly, rather than serving as a reason to find Ohio's birth-record laws unconstitutional, those examples show the ease with which transgender people can update their "sex" on their other state-issued forms of identification, rendering implausible Plaintiffs' allegations regarding Ohio's supposed animus towards transgender people.

In sum, Plaintiffs' complaint is with legislative policy choices in a controversial area, and that is a matter for state legislatures, not for federal courts to impose a one-size-fits-all policy mandate.

## IV. CONCLUSION

None of Plaintiffs' claims state a plausible or colorable violation of the U.S. Constitution. Plaintiffs' Complaint should be dismissed in its entirety.

Dated: July 6, 2018                                    Respectfully submitted,

/s/ Kimberly Moses
KIMBERLY MOSES (0029601)
ALBERT J. LUCAS (0007676)
JASON J. BLAKE (0087692)
CALFEE, HALTER & GRISWOLD LLP
1200 Huntington Center
41 S. High Street
Columbus, Ohio 43215
Telephone: (614) 621-1500
Fax: (614) 621-0100
kmoses@calfee.com
alucas@calfee.com
jblake@calfee.com
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Kimberly Moses*
One of the Attorneys for Defendants

21