## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**STACIE RAY, et al.**

Plaintiffs,

v.

**STEPHANIE MCCLOUD, Director, Ohio Department Health, et al.,**

Defendants.

Case No.: 2:18-cv-00272-MHW-CMV

Judge Michael Watson

Magistrate Judge Chelsey Vascura

## PLAINTIFFS' MOTION FOR ATTORNEY FEES AND COSTS AND BRIEF IN SUPPORT

Pursuant to 42 U.S.C. 1988, Fed. R. Civ. P. 54(d)(2)(B), and Loc. R. 54.2, Plaintiffs respectfully move this Court for an award of the attorneys' fees and costs incurred in successfully and finally obtaining the relief they sought in this litigation. For the reasons set forth in the Brief in Support of this Motion and accompanying exhibits, Plaintiffs seek an award of fees in the amount of **$589,379.70** and costs in the amount of **$20,413.74.**

Respectfully submitted,

Kara Ingelhart* (Illinois Bar No. 6321949)
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Phone: (312) 663-4413
Facsimile: (312) 663-4307
Email: kingelhart@lambdalegal.org

Peter C. Renn* (California Bar No. 247633)
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Phone: (213) 382-7600
Facsimile: (213) 351-6050

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Freda Levenson (0045916)
Susan Becker (0010205)
ACLU of Ohio
4506 Chester Ave.
Cleveland, OH 44103
Phone: (614) 469-3200
Facsimile: (614) 469-3361
Email: flevenson@acluohio.org
Email: sbecker@acluohio.org
Email: ebonham@acluohio.org

David Carey (0088787)
ACLU of Ohio Foundation

Email: prenn@lambdalegal.org

Jennifer S. Roach (0074143)
Thompson Hine, LLP.
127 Public Square
Suite 3900
Cleveland, OH 44114
Phone: (216) 566-5885
Fax: (216) 566-5800
Email: Jennifer.Roach@thompsonhine.com


*Admitted *Pro Hac Vice*

1108 City Park Avenue
Suite 203
Columbus, OH 43206
Phone: (614) 586-1969
Fax: (614) 586-1974
Email: dcarey@acluohio.org

John Knight* (Illinois Bar No. 6201433)
American Civil Liberties Union of Illinois
180 N. Michigan Ave., Suite 2300
Chicago, IL 60601
Phone: (312) 201-9740
Facsimile: (312) 288-5225
Email: jknight@aclu-il.org

Malita Picasso* (New York Bar No. 5750013)
American Civil Liberties Union Foundation
125 Broad St.
18th Floor
New York, NY 10004
Phone: (212) 549-2561
Facsimile: (212) 549-2650
Email: mpicasso@aclu.org

<u>**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND COSTS**</u>

On December 16, 2020 the Court issued a final order in this case granting Plaintiffs' motion for summary judgment and denying Defendants' motion for summary judgment. Defendants did not appeal and the January 16 deadline for filing a notice of appeal has passed. Judgment has been entered, and as a result, Plaintiffs may obtain from Defendants corrected birth certificates that preserve their privacy and dignity without facing an unconstitutional ban. Because Plaintiffs are unquestionably the prevailing party, and because they have attained exceptional success, they respectfully move this Court for an award of the attorney fees and costs they reasonably incurred.

### I.     Case History

The Plaintiffs are four transgender people born in Ohio. On March 29, 2018, they sued three Ohio Department of Health Officials who, in their official capacities, continued to enforce a policy that prohibited transgender people from obtaining birth certificates with correct gender markers. ECF 1. Plaintiffs alleged that Defendants' policy violated their constitutional rights, including their right to privacy and equal protection under the law. ECF 1.

In the first months of the litigation, Defendants sought an extension of time to answer the complaint, filed a motion to stay discovery, and filed an emergency interim motion to stay discovery pending decision of the stay motion. ECF 15, 21, and 22. In the meantime, Defendants filed a Rule 12(b)(6) motion to dismiss. ECF 18. The parties briefed all three motions. The Court granted the interim discovery stay, ECF 26, then denied the stay of discovery. ECF 31. The parties then commenced discovery. At this point, almost a year into the litigation, the Court directed the parties to confer regarding the Southern District's "settlement week," and set a date to discuss resolution of the case. ECF 35. Plaintiffs believed the case was ripe for settlement discussion; Defendants rejected this possibility. The parties so informed the Court.

On September 12, 2019, the Court issued its order denying Defendants' motion to dismiss. ECF 47. Again, Plaintiffs believed the case to be ripe for settlement. The Court's detailed order had clarified what was already clear in the case law, and what was already the practice in 48 other states: Plaintiffs' position was prevailing. Defendants again rejected even the possibility of settlement. Discovery continued, with the parties conducting five depositions and three expert witness depositions, and engaging in significant written discovery and document production. Between January 16 and February 27, 2020, the parties filed cross-motions for summary judgment on an agreed-upon six-brief schedule. ECF 69-75.

On December 16, 2020, this Court ruled fully and finally in Plaintiffs' favor, granting the complete relief they sought: a permanent injunction of Defendants' ban on transgender Ohioans correcting the gender on their birth certificates, and a declaration that the ban was unconstitutional. ECF 80.

This Court's reasoning for denying Defendants' summary judgment motion included the reasoning in the Court's denial of Defendants' motion to dismiss. *Compare, e.g.,* ECF 47 at PAGEID#283-286 *with* ECF 80 at PAGEID#2994-2995 (citing ECF 47).

During the course of the litigation, pursuant to the pretrial order in the case, Plaintiffs provided Defendants quarterly reports on the fees and costs they were incurring. *See* ECF 20.

Plaintiffs, the prevailing party, now seek an award of their reasonable fees and costs.

## II. Law & Argument

### A. There is No Question That Plaintiffs Are the Prevailing Party and Therefore They Are Entitled to an Award of Their Reasonable Fees and Costs

The Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988(b), provides that "[i]n any action or proceeding to enforce a provision of section 1983 of this title . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." The Sixth Circuit has recognized that outside of rare circumstances, "a district court not merely 'may'

4

but must award fees to the prevailing plaintiff." *Morscott, Inc. v. City of Cleveland,* 936 F.2d 271, 272 (6th Cir. 1991).

A plaintiff is "prevailing" when "actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111-112 (1992). Declaratory and injunctive relief at summary judgment satisfies that test. *See Woods v. Willis,* 631 F. Appx. 359, 364 (6th Cir. 2015). This Court's summary judgment ruling and permanent injunction provided Plaintiffs the full relief they sought to remediate Defendants' unconstitutional conduct.

### B. The Fees Plaintiffs Seek Are Reasonable

To determine a reasonable attorney fee award, the Court first calculates the "lodestar" amount by multiplying the hours the prevailing party's attorneys reasonably expended on the litigation times the reasonable hourly rate for each attorney. *See Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013); *Intercommunity Justice & Peace Ctr. v. Registrar, Ohio Bureau of Motor Vehicles*, S.D. Ohio No. 2:18-cv-1247, 2020 WL 3545762 at *4 (June 30, 2020). Then, the Court may enhance the lodestar by a multiplier based on a multi-factor test, the "most important of which is the degree of success obtained." *See Hubbell v. FedEx SmartPost, Inc.,* 933 F.3d 558, 575 (6th Cir. 2019) (*citing Waldo, id.*) (internal quotations and other citations omitted). Here, the lodestar Plaintiffs seek is reasonable, and a multiplier is warranted.

### i. Plaintiffs are seeking a reasonable hourly rate for each billing attorney and legal assistant, and the time they expended was reasonable.

To establish a reasonable hourly rate, courts look to "the market rate in the venue sufficient to encourage competent representation." *Sykes v. Anderson*, 419 Fed. Appx. 615, 618 (6th Cir. 2011) (quoting *Gonter v. Hunt Valve Co*., 510 F. 3d 610, 618 (6th Cir. 2007)). Plaintiffs here are represented by counsel from three nonprofit organizations, the ACLU of Ohio, the ACLU, and Lambda Legal, with support from a law firm operating *pro bono,* Thompson Hine,

LLP. Although the nonprofit counsel organizations do not bill clients or use standard rates, "rates charged for similar services in the community can be used as guidance." *Libertarian Party of Ohio v. Husted*, S.D. Ohio No. 2:11-cv-722, 2013 WL 4833033 at *4 (Sept. 11, 2013). The location of this Court in Columbus defines the relevant community by which to determine value, and counsel's work should be compared to similar services in the region. Plaintiffs supply the Ohio State Bar Association's report, "The Economics of Law Practice in Ohio," updated in 2019, as a comprehensive analysis of this community's norms to substantiate their rates. Exhibit A (from here on, "OSBA Report.")

The rates Plaintiffs' counsel seek in this petition are as follows. *See also* Declarations of attorneys Freda Levenson, Susan Becker, John Knight, Peter Renn, David Carey, Gabriel Arkles, Elizabeth Bonham, Kara Ingelhart, and Malita Picasso (attached as Exhibits B through J, each additionally supported by a resume setting forth each attorney's training and experience, and an individual document detailing the time each attorney devoted to this case, labeled B-1 and B-2, and so forth as to each Declaration).

| Years in practice | Rate | Attorneys |
|---|---|---|
| 15+ | 500 | |
| | | Freda Levenson |
| | | Susan Becker |
| | | John Knight |
| 10-15 | 375 | |
| | | Peter Renn |
| | | David Carey |
| | | Gabriel Arkles |
| 5-10 | 250 | |
| | | Elizabeth Bonham |
| | | Kara Ingelhart |
| 0-5 | 200 | |
| | | Malita Picasso |

In addition to these rates, the law firm Thompson Hine, LLP used the actual hourly rates charged for each of its attorneys who worked on the matter. *See* Declaration of Jennifer Roach, attached

as Exhibit K (documenting time and rates for contributing law firm attorneys, and attaching qualifications and time spent at Exhibits K-1 and K-2).

The rates Plaintiffs submit are reasonable based on the OSBA Report. First, at Exhibit 47 to the Report, the mean billable rates for attorneys in this market are listed by firm size, years in practice, and office location. The mean rate for a firm size of 3 to 6 attorneys is $266. The mean for an office located in downtown Columbus is $324. The mean for an attorney with 0-5 years in practice is $187; for 5-10 years is $225; for 10-15 years is $273; and for advanced attorneys is $268.3. While lawyers specializing in civil rights litigation were not separately listed in the 2019 iteration of this report, the prior version, from 2013, listed civil rights litigators with a higher mean rate of $412, with the 75th percentile being $500. Ohio State Bar Association, "Economics of Law Practice in Ohio in 2013." In recent cases reviewing reasonable rates of comparable civil rights attorneys in this jurisdiction, this Court has approved rates similar to those sought here. *E.g. Intercommunity Justice & Peace Ctr.,* 2020 WL 3545762 at *6.

Every nonprofit attorney who worked on this case specializes in civil rights litigation and constitutional litigation including the subject matter of gay, lesbian, bisexual, and transgender rights. *See* Attorney Declarations. Several of Plaintiffs' attorneys have more than 20 years of LGBT rights-specific litigation experience. Declarations of Susan Becker and John Knight. The Thompson Hine attorneys who worked on the case *pro bono* contributed experience in defense litigation and discovery practice, in addition to other qualities, that the nonprofit firms do not specialize in. *See* Declaration of Elizabeth Bonham. Beyond each counsel group's unique contributions and counsel's high level of subject matter experience, many of Plaintiffs' attorneys also practice in legal markets where the fees they routinely receive are significantly higher than Columbus. But for this petition all counsel have decreased their fees to Columbus standards. *See, e.g.,* Declaration of Peter Renn; Declaration of John Knight. Based on their area of

specialization, expertise, and years in practice compared to norms in the Columbus legal market for smaller-size firms, the rates Plaintiffs' attorneys use here are reasonable.

Plaintiffs also seek fees for the reasonable market rates of the paralegal and legal assistant work performed by ACLU of Ohio staff on this case. The paralegal and legal assistant rates sought comport with the reasonable rates set out in the OSBA Report at Exhibit 49, 51, 53. *See also* Declaration of Tess Sabo, Exhibit L and Declaration of Emma Keeshin, Exhibit M (along with supporting documentation at L-1 and M-1 and -2).

In addition to seeking market-appropriate fees, every attorney who participated in litigating this case and preparing this motion exercised sound billing judgment for the time they charged. First, where possible, Plaintiffs' counsel used paralegal support to avoid billing attorney time. *See* Declaration of Tess Sabo; Declaration of Elizabeth Bonham. And all paralegal and legal assistant work performed by staff from counsel groups besides the ACLU of Ohio, including three staff at Lambda Legal, has been omitted from this motion as a reasonable discount in the calculation of fees. Second, Plaintiffs' counsel relied heavily on the work of their two staff attorneys with the lowest billing rates to prosecute this case. *See* Declaration of Kara Ingelhart; Declaration of Elizabeth Bonham. Where necessary, Plaintiffs' counsel relied on the subject matter expertise of career LGBT rights attorneys, but made efforts to limit the use of these specialists to consultation and supervision. *See* Declaration of Susan Becker; Declaration of John Knight. Plaintiffs' counsel exercised similar discretion in limiting the hour expenditures of all supervising attorneys. *E.g.* Declaration of Freda Levenson. Similarly, Plaintiffs' counsel relied on *pro bono* counsel from Thompson Hine for assistance best provided by the law firm, for example, with document analysis and discovery practice. Declaration of Elizabeth Bonham. Thompson Hine also relied on their lowest-billing attorneys where possible. *See* Exhibits K-1 and K-2.

In addition to exercising sound judgment to staff the case, the fee bill Plaintiffs submit is judicious. In preparing this Motion, Plaintiffs' counsel performed a careful audit of the hours they now submit, including discounting categories of their actually-expended time. First, Plaintiffs' counsel do not bill for the considerable time they spent investigating this matter pre-litigation or preparing the complaint. Plaintiffs' counsel reduced their fee bill by all of the time spent researching and drafting the complaint and the associated filings, including a necessary motion to proceed anonymously on behalf of one of the Plaintiffs. Second, Plaintiffs' counsel eliminated all time for research, writing, and consultation spent on courses of action they considered, but ultimately did not pursue in the litigation. Third, Plaintiffs' counsel eliminated all time spent by any attorney after the Court's final December 16, 2020 Order, except for time spent on this fee motion by Elizabeth Bonham. Fourth, Plaintiffs' counsel did not bill for any small or clerical tasks regardless of how much time these tasks consumed individually and collectively. Finally, Plaintiffs' counsel eliminated entries for any potentially duplicative time, and eliminated any entries that appeared to be in error. *See* Declaration of Elizabeth Bonham.

Applying well-established legal standards to the facts presented in this petition and comprehensively documented in the attached exhibits, the reasonable rates for the attorneys and paralegals who worked on this case multiplied by a judicious calculation of their respective hours produces a lodestar for this fee petition of **$453,369**.

ii.    **Plaintiffs are entitled to a multiplier based on the *Johnson* factors.**

Having established the lodestar calculation, the Court looks next to adjustments in light of relevant factors—and in this case, the Court should enhance the lodestar by a reasonable multiplier. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee … and indeed in some cases of exceptional success an enhanced award may be justified … The most critical factor is the degree of success obtained." *Hensley v. Eckerhart,*

461 U.S. 424, 435-6 (1983). In addition to "exceptional success," the Court must consider other factors that point to additional circumstances where the rate "ought to be enhanced by some percentage factor." *Id.* at 449, n. 8 (Brennan, J., concurring in part). The Sixth Circuit recognizes the following factors as justifying an adjustment of the lodestar calculation: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See, e.g., Planned Parenthood Southwest Ohio Region v. Dewine,* 931 F.3d 530, n.3 (6th Cir. 2019) (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974) (from here forward, "the *Johnson* factors.")

While courts weigh various of these factors based on their relevance to a particular case, the "most important…is the degree of success obtained." *Hubbell* 933 F.3d at 575 (*citing Waldo*). In cases of extraordinary success, the Court should apply a multiplier. *See, e.g. Moore v. Brunner,* S.D. Ohio No. 2:08-cv-224, 555, 2010 WL 317017 at \*3 (Jan. 25, 2010); *Barnes v. Cincinnati,* S.D. Ohio No. 1:00-cv-780, 2006 WL 418651 at \*2-3 (Feb. 21, 2006). Here Plaintiffs have achieved "exceptional success" in this matter, and *all* of the other *Johnson* factors further favor an enhancement.

<u>The Plaintiffs obtained exceptional success (factor 8, the key consideration).</u>

In bringing this case, the Plaintiffs sought one thing, an injunction against Defendants' policy that prevented them from obtaining gender-corrected identity documents. With this Court's order, ECF 80, Plaintiffs won that relief, and with Defendants' decision not to appeal, it

became undeniably permanent. This victory extends not only to the four Plaintiffs here, but to all similarly situated transgender persons born in Ohio, who may now obtain this critical correction to this foundational identify document which they need to live their lives with dignity and privacy. As a result, Ohio has become the 49th state to come into compliance with the constitutional mandate that transgender people have equal rights to possess correct identity documents. This victory for Plaintiffs and for many others merits an enhanced fee.

Plaintiffs' counsel had to expend considerable time, risk the possibility of receiving no financial compensation for their work, and forgo taking on other matters to win this case (factors 1, 6, 4).

To undertake this case, Plaintiffs' counsel, three nonprofit advocacy organizations with small in-house legal staff, had to forgo taking on other matters critical to their missions. In addition, each counsel organization risked recovering nothing for the significant time and resources they dedicated to vindicating Plaintiffs' constitutional rights, unless they were successful on the merits and in a fee petition. As detailed above, this included representing the Plaintiffs without charge, while expending significant attorney time and out-of-pocket costs. Further, the time Plaintiffs' counsel had to expend was more substantial because it was necessary to address novel and complex questions of law, in an evolving area. In particular, Lambda Legal and ACLU of Ohio each devoted a significant part of their staff attorneys' time—totaling more than 500 hours each over three years—to just this case. Declaration of Kara Ingelhart; Declaration of Elizabeth Bonham. In the ACLU of Ohio's case, one staff attorney constitutes one-third of its entire legal staff. *Id.* The substantial burden and risk that was necessary, and that Plaintiffs' counsel undertook here, justifies a multiplier.

The litigation involved novel and difficult questions, and Plaintiffs' counsel possessed the unique skills required and contributed the specialized experience necessary to prevail (factors 2, 3, 9).

This case presented complex and novel questions of law that required highly skilled, specialized attorneys to navigate. Each nonprofit attorney who worked on this case specializes in

constitutional law and has experience—in some cases a dedicated career's worth of experience—with legal issues that affect LGBT individuals. This level of subject matter knowledge was necessary to address the constitutional questions here, including the development of privacy and equal protection law in general and as specifically applied to transgender individuals in this circuit. The level of difficulty this case presented and the skill it demanded warrant an enhanced fee award.

<u>This case, which involved no demand for damages, would not likely have been undertaken by the private bar (10).</u>

Although the multiple constitutional violations that this Court redressed had previously persisted for years, and potentially affected hundreds if not thousands of individuals, no attorney ever challenged Defendants' policy until this case. Indeed, there was little incentive for a member of the private bar to undertake it: the litigation was protracted, difficult, and, as discussed above, required significant time, specialized knowledge, and the expenditure of significant funds to cover litigation expenses. Moreover, there was no financial incentive to take such a case; Plaintiffs sought a prohibitory injunction without monetary damages, and there was no guarantee of a fee award even if the litigation succeeded. The "undesirability" of this case in that sense justifies a multiplied fee award.

### iii. The lodestar multiplied by the appropriate enhancement totals Plaintiffs' reasonable fees.

Based on the *Johnson* factors—most importantly, the exceptional degree of success attained, and in addition, the risks involved in taking the case, the complexity of the litigation, and the specialized skills required to address novel issues, among other factors—the work that Plaintiffs' attorneys performed merits an enhancement of **1.3 times** the lodestar fee. The ultimate calculation of fees is therefore:

453,369*1.3 = **$589,379.70**

### C. The Costs Plaintiffs Seek Are Recoverable in Full

§ 1988 permits courts to award, in addition to fees, "those incidental and necessary expenses incurred in furnishing effective and competent representation." *Waldo,* 726 F.3d at 827. This includes costs such as travel and office expenses. *Id.*

Here, in addition to the time they expended on this litigation, Plaintiffs' counsel incurred total costs of **$20,413.74.** Second Declaration of Tess Sabo, attached as Exhibit N; *see also* Declaration of Elizabeth Bonham. The costs for which Plaintiffs seek reimbursement are the type § 1988 contemplates, including filing fees, deposition costs, and expert witness fees. As nonprofit entities, counsel for Plaintiffs always make efforts to save costs by, for example, staying with friends or at low-cost lodging during travel. *Id.* Plaintiffs made such efforts to limit costs here, and further exercised billing judgment by, *e.g.,* hiring a pro bono expert witness, and limiting travel. In addition, to prepare this motion, Plaintiffs' counsel applied additional reasonable cuts to the costs they seek to recover: Plaintiffs do not seek reimbursement for computer, research, document review, telephone, copying or other office services; any food or travel lodging; and any car travel. *Id.* For example, if one attorney traveled to assist with preparation for and second-chair a deposition, Plaintiffs do not charge for that attorney's lodging, car travel, or incidental expenses. Further, Plaintiffs' counsel do not seek any costs expended by Thompson Hine, LLP. In support of their request for a cost award, Plaintiffs attach full costs records from the ACLU of Ohio, ACLU, and Lambda Legal, along with a sheet of the costs actually sought *See* Exhibits N-1 through N-4. These records demonstrate that the costs Plaintiffs seek here are substantially lower than those they actually expended during this case. Plaintiffs are entitled to full recovery of the costs they seek.

### III. Conclusion

For the reasons set out in this brief, Plaintiffs respectfully request that this Court grant an

award of attorney fees in the amount of **$589,379.70** and costs in the amount of **$20,413.74.**

Further, Plaintiffs note that they have a right to move for additional fees and costs that they may

incur if they must spend additional time litigating this Motion.

Respectfully submitted this 1 day of February, 2021

Kara Ingelhart* (Illinois Bar No. 6321949)
Lambda Legal Defense and Education Fund, Inc.
105 W. Adams St., 26th Fl.
Chicago, IL 60603
Phone: (312) 663-4413
Facsimile: (312) 663-4307
Email: kingelhart@lambdalegal.org

Peter C. Renn* (California Bar No. 247633)
Lambda Legal Defense and Education Fund, Inc.
4221 Wilshire Blvd., Suite 280
Los Angeles, CA 90010
Phone: (213) 382-7600
Facsimile: (213) 351-6050
Email: prenn@lambdalegal.org

Jennifer S. Roach (0074143)
Thompson Hine, LLP.
127 Public Square
Suite 3900
Cleveland, OH 44114
Phone: (216) 566-5885
Fax: (216) 566-5800
Email: Jennifer.Roach@thompsonhine.com

*Admitted *Pro Hac Vice*

*/s/ Elizabeth Bonham*
Elizabeth Bonham (0093733)
Freda Levenson (0045916)
Susan Becker (0010205)
ACLU of Ohio
4506 Chester Ave.
Cleveland, OH 44103
Phone: (614) 469-3200
Facsimile: (614) 469-3361
Email: flevenson@acluohio.org
Email: sbecker@acluohio.org
Email: ebonham@acluohio.org

David Carey (0088787)
ACLU of Ohio Foundation
1108 City Park Avenue
Suite 203
Columbus, OH 43206
Phone: (614) 586-1969
Fax: (614) 586-1974
Email: dcarey@acluohio.org

John Knight* (Illinois Bar No. 6201433)
American Civil Liberties Union of Illinois
180 N. Michigan Ave., Suite 2300
Chicago, IL 60601
Phone: (312) 201-9740
Facsimile: (312) 288-5225
Email: jknight@aclu-il.org

Malita Picasso* (New York Bar No. 5750013)
American Civil Liberties Union Foundation
125 Broad St.
18th Floor
New York, NY 10004
Phone: (212) 549-2561
Facsimile: (212) 549-2650
Email: mpicasso@aclu.org

## CERTIFICATE OF SERVICE

I hereby certify that on this February 1, 2021, I filed the foregoing electronically through the Court's CM/ECF system. Parties may access this filing through the Court's system.

*/s/ Elizabeth Bonham*

Elizabeth Bonham (0093733)
Attorney for Plaintiffs